Upon consideration of the motion of defendant requesting that plaintiff's complaint be dismissed, the Court having heretofore filed its Memorandum and being fully satisfied in the premises,

It is ordered, that the complaint herein be, and the same is hereby, dismissed.

**UNITED STATES of America, Plaintiff,**

**v.**

**818.76 ACRES OF LAND, MORE OR LESS, Situate IN CEDAR AND DADE COUNTIES, STATE OF MISSOURI, and George I. Hinds, et al.,**

**and**

**1,351.69 acres of land, more or less, situate in Cedar and Dade Counties, State of Missouri, and Theodore Frieze, et al., Defendants.**

**Civ. A. Nos. 2138, 2245.**

United States District Court,
W. D. Missouri, S. D.

July 6, 1970.

David M. Proctor, Jr., Asst. U. S. Atty., Kansas City, Mo., for plaintiff.

Don W. Kennedy, Nevada, Mo., for defendants.

## ORDER AWARDING EXPENSE OF ACTUARIAL FEE TO DEFENDANTS AS PART OF JUST COMPENSATION

BECKER, Chief Judge.

On February 4, 1969, based upon a stipulation among all parties in the above consolidated causes, the Court fixed the amount of just compensation for plaintiff's taking by condemnation of Tracts Nos. 358 (in Civil Action No. 2138), 1315 and 1350 (in Civil Action No. 2245). Ten days later, plaintiff deposited in the registry of the Court the additional sum of $4,100. This deposit, together with a sum of $27,400.00 previously deposited by plaintiff, constituted payment of the amount of just compensation based upon the stipulation. Thereafter, the life tenants moved for commutation of the estate and distribution of the proceeds in accordance with § 442.530 RSMo. This motion was granted by the order of this Court entered on July 14, 1969. See United States v. 818.76 acres, etc. (W.D.Mo.) 310 F.Supp. 210. Thereafter, by the final judgment entered herein on August 29, 1969, final distribution of the proceeds deposited by plaintiff was made in accordance with the order of July 14, 1969. Because the applicable Missouri statute, § 442.530, *supra*, required distribution in accordance with the life expectancy of the life tenants, an actuarial report was necessary before the final judgment could be entered. This was supplied by Nelson and Warren, Inc. In the final judgment entered on August 29, 1969, the Government was requested by the Court to provide the actuarial opinion. This request was a retention of jurisdiction by the Court to make appropriate orders respecting the payment of the expense of the actuarial opinion. "A court has jurisdiction over the persons and subject matter of an action until it rules to the contrary." Boone v. Southern Ry. Co. (E.D.Pa.) 9 F.R.D. 60.

Further, by letter of counsel received in this Court on March 14, 1970, defendant landowners sought relief from the judgment entered herein on August 29, 1969. In the letter, counsel for the landowners reported that the Government had declined to pay the expense of the actuarial fee and that the actuarial firm had presented the bill therefor to the defendant landowners. Since the letter was received in this Court within a year of the final judgment of August 29, 1969, it was ordered, by order of this Court entered on June 9, 1970, to be filed as a motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure. Because it is determined herein that the Government should have been required in the final judgment of August 29, 1969, to pay the expense of the actuarial opinion, it must also be concluded that it was correct to treat the letter as a motion for relief from judgment under Rule 60(b) (1) providing for relief from mistake not apparent on the record. Cf. In re Merry Queen Transfer Corp. (E.D.N.Y.) 266 F.Supp. 605.

As a matter of law, the Government should have been required to pay the expense of the actuarial opinion. It is well settled that, prior to the enactment of the amendment to § 2412, Title

28, United States Code, the costs of defending a condemnation action could not be taxed to the Government. United States v. Certain Lands (S.D.N.Y.) 36 F.Supp. 968. Further, although § 2412, as amended, might now authorize the taxing of costs against the Government in a case like this one, it has been held that the statute as amended to permit taxing costs against the Government on a wider basis does not affect cases filed, as this one was, prior to July 18, 1966. Allen v. Rachal (W.D.Tex.) 283 F.Supp. 986. On the other hand, just compensation is designed to place the owner in as good a position pecuniarily as he would have occupied if his property had not been taken. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 279, 87 L.Ed. 336; Hembree v. United States (C.A.8) 347 F.2d 109. Further, although the ascertainment of just compensation and apportionment thereof according to the respective rights of the parties are the functions of the Court, it is the duty of the attorneys and the Court, under Rule 71A(j), F.R.Civ.P., to expedite the apportionment and distribution among different parties according to their determined rights.

Although the expense of the actuarial fee should not be assessed as costs against plaintiff, it should have been included in the judgment as a part of just compensation contemplated by the Fifth Amendment, since it is an expense attributable to the administrative expedition of apportionment rather than the judicial determination of apportionment. Cf. United States v. Lee (C.A.5) 360 F.2d 449, where the cost of a survey ordered by the landowner to show the correct acreage being taken from him was held to be includible in "just compensation." In that case, it was held that, while the condemnee has the burden of identifying his land when more than one landowner is involved, the Government has the burden of showing the correct description in metes and bounds of the identified land of one landowner which it takes.

The principle of the *Lee* case is applicable in the case at bar, in which there is no dispute among the distributees concerning their respective interests in the condemnation award. Those interests are fixed by state law and there is no question, under the controlling law, of the standards determining fractions of the award owing proportionately to each condemnee. In this case, in which there can be no dispute of law or fact concerning the respective interests of the condemnees, the Government should bear the cost of the expert opinion necessary to compute the amounts to be distributed to each owner under undisputed law and facts. This is true because the distribution follows by operation of law, in certain actuarially determinable proportions.

Because of the existence of the state statute, this actuarially determinable distribution must be deemed to be foreseeable by the Government.

Just as the Government has the initial duty of naming the owners and correctly describing the property which it seeks to take through condemnation proceedings, it has the duty to pay what is determined to be just compensation therefor to each landowner. The Government also bears the burden of determining the correct distribution when there is no dispute of fact or law in respect thereof. Conversely, the expense of that determination cannot properly be deemed as a cost of a condemnee's defending the condemnation action because, by virtue of the state statute, he has no burden of proof in respect of the proportion to which he is entitled, unless, as is not the case at bar, he elects to question the age of the life tenants or asserted interests of other landowners.

In opposition to this conclusion the Government contends that this actuarial cost concerns "matters of apportionment and distribution of the award, with which plaintiff had no interest or concern." Plaintiff cites United States v. Dunnington, 146 U.S. 338, 352, 13 S.Ct. 79, 83, 36 L.Ed. 996; City of St. Paul v. Certain Lands (C.A.8)

48 F.2d 805, 807; United States v. 758.-72 Acres of Land (W.D.Ark.) 24 F.R.D. 271–277; and 2 Nichols on Eminent Domain, pp. 81, 82 (3d ed. rev.). But those authorities did not involve a state statute like the one involved in the case at bar, making proportionate distribution incontestable as a matter of law in Missouri. They apply where there is a dispute in respect of the apportionment of the award. The result in City of St. Paul v. Certain Lands, *supra,* for instance, depends upon a Minnesota statute expressly providing that: "If for any reason it be doubtful to whom any award should be paid, the petitioner may pay the same to the clerk, to be paid out under the direction of the court". Further, the concern here, by the same reasoning, is not one of apportionment, but of just compensation. In its brief, the Government asserts that, under the above authorities, its obligation to the defendants herein ended when it paid the determined compensation into court. But the rule presumes an adjudication of the issue of apportionment and is primarily for the purpose of insulating the Government from liability for any error which the Court might make in determining the various interests. See United States v. Dunnington, *supra.* Further, this rule is given as the "usual" or "ordinary" rule, subject to certain exceptions. "[P]ayment into Court for the benefit of the property owner is *usually* treated as payment to him." United States v. Certain Land in City of St. Louis, Mo. (E.D.Mo.) 41 F.Supp. 809, 814, affirmed O'Donnell v. United States (C.A.8) 131 F.2d 882. (Emphasis added.) "[T]he condemnor * * * is not *ordinarily* interested in the distribution of the award." United States v. 758.-72 Acres of Land, *supra,* 24 F.R.D. at 277. (Emphasis added.) In United States v. Certain Parcels of Land in Prince George's County, Md. (D.Md.) 40 F.Supp. 436, it was stated:

"When the government deposits the estimated just compensation in the registry of the court and takes the property, it has, subject to possible exceptions hereafter discussed, discharged its obligation, and is not directly concerned with the distribution of the fund. The duty to make proper distribution is thereby imposed upon the court, in accordance with well-established principles of judicial function. United States v. Dunnington, 146 U.S. 338, 350, 13 S.Ct. 79, 36 L.Ed. 996; Rambo v. United States, 5 Cir., 117 F.2d 792; City of St. Paul v. Certain Lands, 8 Cir., 48 F.2d 805. If the court makes a mistake in awarding the fund to one of several adverse claimants who are before the court, the remedy is of course by appeal, and the defeated party would have no claim against the government. On the other hand, the court is not an administrative agency, [and] has no proper function of investigation on its own initiative as to who are the real owners of land taken for public use and can deal only with the facts as disclosed in the pleadings and testimony in the case." 40 F.Supp. at 443–444.

The administrative duty of the Government is especially applicable to the post-deposit proceedings in this case in which no question of law or fact existed and the sole task remaining, by operation of law pursuant to the order of July 14, 1969, was to make the calculations in accordance with that law. This required the actuarial opinion of Nelson and Warren, Inc. The landowners should not be required to pay the expense thereof because payment by them would diminish the just compensation involved. All that remained after July 14, 1969, was the administrative function which devolved upon the government both generally (by the provision of Rule 71A(j) that after deposit of the award, "the court and attorneys shall expedite the proceedings for the distribution of the money so deposited and for the ascertainment and payment of just compensation") and especially by virtue of its assumption of public administrative tasks where a private party has no burden to discover and prove the relevant information. Cf. United States v. Lee, *supra.*

Further, the problem, under the circumstances of this case, remained one of "just compensation" rather than of "apportionment and distribution." The Government relies on 2 Nichols on Eminent Domain, *supra,* to conclude, as is there stated, "apportionment is of no concern to the condemnor and is a problem in which only the claimants are involved." § 5.3[4], p. 82. But "[t]here can be no just compensation, as the Constitution requires, if the fund is dispersed (sic) to the wrong persons." Bullen v. DeBretteville (C.A.9) 239 F.2d 824, 830; Clark v. White (C.A.5) 185 F.2d 528. Moreover, the necessity for dealing with apportionment as a legal or factual problem was absent because of the lack of dispute respecting the facts (mainly, the age of the life tenants) and by the order of this Court of June 14, 1969, making it clear that the law of Missouri applied to make necessary the commutation of the life estates and distribution. The commutation and distribution were not in accordance with matters to be subsequently adjudicated in this Court, but authorized by operation of the Missouri statute through certain expert information to be determined by investigation. It has been held that it is not a judicial function to determine apportionment and distribution when such is accomplished in accordance with an extrajudicial instrument, such as a stipulation. See United States v. 881.39 Acres of Land, More or Less, Situate in McCurtain County, Oklahoma (E.D.Okla.) 254 F.Supp. 294. State statutes apportioning interests are at least as effective as stipulations. It must be concluded that it was not a judicial function in this case to determine apportionment and distribution when it took place in accordance with the state statute determined to be applicable. Thus, under the provisions of Rule 71A(j), *supra,* in the absence of any duty upon the Court to determine disputed questions of fact or law and in the absence of any duty of the landowners to bear the burden of proving undisputed facts, the attorney for the Government had the duty to expedite distribution by securing the actuarial opinion and the Government, by virtue of its administrative duties, has the duty to pay the expense of such report as an element of just compensation. United States v. Lee, *supra.* In the absence of any controverted facts or law concerning apportionment, there is no basis for the legal fiction that deposit of the award constitutes payment to the owner. See United States v. Certain Land in City of St. Louis, Mo., *supra,* where the legal fiction of deposit of the award equalling payment to the distributees is phrased.

Plaintiff notes that the life tenants, "joined by all prospective bodily heirs (many of whom were minors), moved the Court to commute into cash the life tenant's interest in the foregoing awards according to the formula provided by Section 442.530, R.S.Mo., 1959"; that "[t]his motion was resisted by Neal E. Millert, the guardian *ad litem* for the unknown and unborn contingent remaindermen"; that "[p]laintiff took no part in this"; and that "the actuarial firm's services were solicited by the attorney for the life tenants." But, where the result was dictated by state law, as it was in this case, the question is not whether the plaintiff did take any part in these post-award proceedings, but whether it should have taken part. In this respect, plaintiff argues that apportionment of the award did not follow the making of the award by operation of law because:

"[t]he life tenants could have been paid the income from the award during their lives, after which the fund would have been distributed to those persons who then qualified as bodily heirs of one of the life tenants. Such has been the method of distribution in other federal courts. United States v. 575.-52 Acres of Land, 118 F.Supp. 923, D.N.H. (1954); United States v. 122,-000 Acres of Land, 57 F.Supp. 421 (N.D.Tex.1944)."

The plaintiff recognized its obligation to pay the compensation of the guardian *ad litem,* and inconsistently opposes payment of the actuarial fee.

As was made clear, however, in the order of this Court entered on July 14, 1969, the question is not what is done in other Courts but what the applicable state law of Missouri requires to be done. In this respect, it appears, that the Government might well have been interested in supplying the Court a brief on the question of whether the life estates should be commuted in accordance with Missouri law, particularly in view of its apparent contention on this motion that the result should have been otherwise. Further, as is readily apparent, upon the determination of that question depended the question of whether apportionment should be a judicial or administrative function, a question in which the Government was vitally interested. Thus, the order of this Court of July 14, 1969, requested the plaintiff, rather than counsel for defendants, to secure the pertinent information for the administrative distribution of the award under the Missouri statute. But, as is now admitted, the Government apparently declined to take the initiative as it should have and the actuarial opinion was solicited by the attorney for defendants. The failure of the Government to perform its duty under the order of July 14, 1969, and applicable law can not now be converted by the Government into a reason that it was not interested in the post-deposit proceedings. Its interest is dictated by law.

The order of July 14, 1969, stated the law in respect of distribution. It made clear that there was no issue of fact or law respecting apportionment. There was no dispute respecting any other relevant fact. Had defendants, or any of them, objected to the information supplying the basis of or contained in the actuarial opinion, the dispute would have been resolved judicially. But no such dispute appeared, and the Court, having done all within its power by interpreting the applicable law, could not then act as an administrative organ and enforce and execute that law. No judicial resources for payment of the actuarial fee existed. The obligation to pay rested on the Government. The Government must therefore pay the expense of the actuarial opinion as a part of just condemnation herein. "The condemnor must bear his normal expenses arising out of the proceeding; but expenses incurred in ascertaining the identity of distributees and deciding between conflicting claimants are not chargeable against the condemnor." 7 Moore's Federal Practice ¶ 71A.130[3], p. 2809 (1968 ed). This conclusion is in accordance with that rule.

Further, it is noted that, inconsistent with the Government's claim that it had no interest in the proceedings after the deposit of the award in court, the Government paid the attorney fee of $225 for the guardian *ad litem* for the unknown and unborn contingent remaindermen who filed the brief in opposition to the commutation and apportionment of life estates which was finally ordered by the Court.

In Lake Charles Harbor and Terminal District v. Henning (W.D.La.) 260 F. Supp. 756, affirmed (C.A.5) 387 F.2d 264, it was held that the rule of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, requires that where the law of the state provides for an award of expert fees as "just compensation" to landowners if they establish a higher value for their land on trial than the value originally deposited in court by the Government, the requirement is a substantive one binding on the federal court. Although, under Missouri condemnation law, the condemnor may be required to pay the expense of appraisal and expert fees and costs generally, Rule 86.09 Mo.R.Civ.P., V.A.M.R., there is no Missouri case stating (as did the Louisiana case relied on in *Henning*) that the payment of those expenses is necessary to "just compensation." But the principle of the *Henning* case nevertheless has application in the case at bar by virtue of the Missouri statute providing for commutation and apportionment of life estates. In the case at bar, that statute was held to have particular applicability in condemnation proceedings and to

grant the right to statutory apportionment with especial appropriateness to condemnees. See United States v. 818.76 Acres (W.D.Mo.) 310 F.Supp. 210. Therefore, under the *Henning* and *Erie* doctrines, the principle of just compensation in this case must be construed to include the expenses of administration of the Missouri apportionment statute.

It is therefore

Ordered that plaintiff pay the expense of the actuarial report rendered herein by Nelson and Warren, Inc., to defendants as a part of "just compensation." It is further

Adjudged that the landowner defendants herein have and recover of and from the plaintiff the amount which they have expended for the actuarial report rendered in this case by Nelson and Warren, Inc.