Jack W. LAWSON and, Mary Ann Lawson, Defendants Below, Appellant,

v.

STATE of Delaware, upon the Relationship of the Secretary of the Department of Transportation, Plaintiffs Below, Appellee.

No. 518, 2013.

Supreme Court of Delaware.

Submitted: Jan. 29, 2014.
Decided: April 23, 2014.

Richard L. Abbott, Esquire (argued), Abbott Law Firm, Hockessin, Delaware, for Appellants.

Gregory B. Williams (argued), Austen C. Endersby (argued), and Wali W. Rushdan, II, Esquires, Fox Rothschild LLP, Wilmington, Delaware, for Appellee.

Before HOLLAND, BERGER, and JACOBS, Justices.

JACOBS, Justice:

### INTRODUCTION

By Opinion dated July 22, 2013, this Court ordered the dismissal without prejudice of a condemnation proceeding instituted in the Superior Court by the plaintiff-below/appellee, the State of Delaware Department of Transportation ("DelDOT"), against the defendants-below/appellants, Jack and Mary Ann Lawson (the "Lawsons"). Thereafter, the Lawsons moved in the Superior Court proceeding for an award of litigation expenses and costs, which the Superior Court denied by order dated September 25, 2013. The Lawsons appeal from that order. They claim entitlement to reimbursement for the litigation expenses they incurred by virtue of the condemnation proceeding, under both the Real Property Acquisition Act, and the

common law bad faith exception to the so-called "American Rule." They also claim that they are statutorily entitled to an award of costs.

This appeal requires us to construe, for the first time, certain language in 29 *Del. C.* § 9503, the reimbursement provision of the Real Property Acquisition Act (the "Act"). We hold that that provision requires reimbursement for litigation expenses related to a condemnation proceeding where a court determines that the subject property cannot be acquired by the governmental entity's particular exercise of its underlying eminent domain power in that specific proceeding. Accordingly, we determine that the Superior Court erred by denying the Lawsons' motion for litigation expenses under 29 *Del. C.* § 9503. We also conclude, however, that the Superior Court correctly determined that the Lawsons were not entitled to litigation expenses under the bad faith exception to the American Rule. Finally, we hold that the Superior Court erred by not addressing the Lawsons' application for costs.

We therefore affirm in part, reverse in part, and remand the case to the Superior Court to determine the litigation expenses and costs to which the Lawsons are statutorily entitled.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY [1]

The Lawsons own approximately ten acres of real property located at 323 Strawberry Lane in Middletown, Delaware.[2] That property is zoned as "CR, Regional Commercial District," although the Lawsons currently use the property for their single—family residence—a legal nonconforming use.[3] Were the Lawsons to develop their property for commercial use (as the property's zoning designation permits), they would need to widen the property's current 12–foot–wide driveway to obtain the requisite DelDOT commercial entrance permit.[4]

Beginning in 2010, DelDOT sought to acquire approximately 1.51 acres of the Lawsons' property[5] to construct a storm water management pond parallel to Strawberry Lane.[6] The acreage DelDOT sought to acquire included all the Lawsons' property that fronted Strawberry Lane. That acquisition, if agreed to, would leave the Lawsons without access to the road.[7] To resolve that problem, DelDOT planned to build a raised berm across the storm water management pond, over which it would construct a new 12-foot-wide driveway for the Lawsons.[8]

In December 2010, DelDOT obtained an appraisal of the Lawsons' property that valued the fee interest at $130,000.[9] That appraisal was calculated by subtracting the estimated post-taking fair market value of the Lawsons' property ($420,000) from that property's estimated pre-taking fair market value ($550,000). Both fair market

1. The factual background is drawn from this Court's earlier July 2013 Opinion in this case, *Lawson v. State ex rel. Sec'y of the Dep't of Transp.*, 72 A.3d 84 (Del.2013).

2. *Lawson*, 72 A.3d at 85. Middletown is located in New Castle County.

3. *Id.* at 85–86.

4. *Id.*

5. DelDOT also sought to acquire a temporary construction easement covering 0.14 acres. *Id.* at 86.

6. *Id.*

7. *Id.*

8. *Id.*

9. *Id.* The appraisal valued the temporary construction easement at $3,080. *Id.*

value estimations assumed that the highest and best use of the Lawsons' property was for commercial development.[10]

In September 2011, DelDOT offered the Lawsons $133,100 for the property acquisition and the temporary construction easement.[11] At a meeting with DelDOT on September 12, 2011, the Lawsons expressed concern that the planned relocated 12-foot-wide driveway would not allow the property to be commercially developed.[12] On October 12, 2011, the Lawsons' real estate representative informed DelDOT that two engineers had concluded that the relocated driveway could not accommodate a commercial entrance—which, therefore, would preclude commercial development. To compensate them fairly, the Lawsons proposed a purchase price of $550,000.[13] In November 2011, the Lawsons' attorney again told DelDOT that the Lawsons' post-taking property (with the planned 12-foot-wide driveway) could not be commercially developed, for which reason DelDOT's appraisal and proposed $133,100 purchase price were inadequate.[14]

On January 18, 2012, DelDOT filed a condemnation action in the Superior Court.[15] By order dated May 15, 2012, the Superior Court granted DelDOT's motions for possession and for a protective order,[16] and denied the Lawsons' motions to dismiss and to compel.[17] By order dated May 17, 2012, that court granted DelDOT immediate entry and possession over the Lawsons' property.[18] On June 22, 2012, this Court accepted the Lawsons' interlocutory appeal from those orders.

By Opinion dated July 22, 2013, this Court reversed the Superior Court judgment, vacated the Superior Court orders, and remanded with instructions to dismiss the condemnation action without prejudice.[19] We determined that because DelDOT's appraisal erroneously assumed that the Lawsons' post-taking property would be suitable for commercial use, DelDOT had failed to establish a purchase price that was "reasonably believed [to be] just compensation" for the acquisition.[20] Therefore, this Court held, the condemnation violated Section 9505(3) of the Act, 29 *Del. C.* § 9505(3), and the DelDOT action must be dismissed.[21] On August 7, 2013, the Superior Court dismissed the DelDOT

10. *Id.*

11. *Id.*

12. *Id.*

13. *Id.* Thereafter, DelDOT informed the real estate representative that "the appraisal covered all his questions." *Id.*

14. *Id.* at 87. On January 13, 2012, DelDOT's counsel informed the Lawsons' attorney that DelDOT disagreed with the Lawsons' position, but was still considering the appraisal issue. *Id.*

15. *Id.* On February 7, 2012, DelDOT deposited $133,100 with the Superior Court—its good faith estimate of just compensation. *Id.*

16. On February 28, 2012, DelDOT moved for a protective order to preclude certain discovery requests from the Lawsons. The Lawsons responded with a motion to compel discovery on the basis that DelDOT had not complied with its discovery obligations and no stay of discovery had been entered or requested.

17. *State ex rel. Sec'y of the Dep't of Transp. v. Lawson,* C.A. No. N12C–01–128 (Del.Super. May 15, 2012) (ORDER).

18. *State ex rel. Sec'y of the Dep't of Transp. v. Lawson,* C.A. No. N12C–01–128 (Del.Super. May 17, 2012) (ORDER).

19. *Lawson,* 72 A.3d 84.

20. *Id.* at 91–92 (quoting 29 *Del. C.* § 9505(3)) (modification in the original).

21. *Lawson,* 72 A.3d at 92–93.

condemnation action, without prejudice.[22]

On September 12, 2013, the Lawsons moved, in the Superior Court, for an award of litigation expenses, claiming that they were entitled to reimbursement for their expenses under both 29 *Del. C.* § 9503 [23] and the bad faith exception to the American Rule that each party must pay for its own litigation expenses. The Lawsons also moved for an award of costs under 10 *Del. C.* §§ 5101 and 5104. By order dated September 25, 2013, the Superior Court denied that motion.[24] The trial judge determined that the dismissal (without prejudice) of the condemnation action did not constitute a final judgment that DelDOT could not acquire the Lawsons' property. Therefore, the reimbursement provision in 29 *Del. C.* § 9503 had not been triggered. Moreover, the court held, DelDOT had not acted in bad faith in instituting the condemnation action. The September 25 order did not address the Lawsons' application for an award of costs.[25]

The Lawsons appealed to this Court from the Superior Court's September 25 order. For the reasons next discussed, we reverse in part the Superior Court judgment and remand the case for further proceedings.

### THE PARTIES' CONTENTIONS AND THE STANDARD OF REVIEW

The Lawsons advance three claims of error on this appeal. First, they claim that the Superior Court erred by denying the Lawsons' motion for an award of litigation expenses under 29 *Del. C.* § 9503. That claim requires this Court to determine whether § 9503, which applies where there is a "final judgment . . . that the real property cannot be acquired by condemnation," requires that litigation expenses be awarded in this case. More specifically, we must construe whether the statutory language "cannot be acquired by condemnation" plainly means (as the Lawsons contend) "cannot be acquired by *this* condemnation *proceeding.*" Second, the Lawsons claim that the Superior Court erred by not awarding them litigation expenses under the bad faith exception to the American Rule. That claim presents the issue whether—as the Lawsons contend—DelDOT initiated the underlying condemnation proceeding in bad faith. Third, the Lawsons claim that the Superior Court erred by not addressing whether costs are awardable under 10 *Del. C.* §§ 5101 and 5104. That claim requires us to determine whether the Superior Court erred by not explicitly addressing the cost issue when it denied the Lawsons' motion.

■■■■ This Court reviews a trial court's interpretation of a statute *de novo.*[26] We review a trial court's denial of litigation expenses under the bad faith exception to the American Rule for abuse of discre-

22. *State ex rel. Sec'y of the Dep't of Transp. v. Lawson,* C.A. No. N12C–01–128 (Del.Super. Aug. 5, 2013) (ORDER).

23. 29 *Del. C.* § 9503 provides that:
 Where a condemnation proceeding is instituted . . . to acquire real property . . . and the final judgment is that the real property cannot be acquired by condemnation . . . the owner of any right, title or interest in such real property shall be paid such sum as will . . . reimburse such owner for rea-

sonable attorney, appraisal and engineering fees, actually incurred because of the condemnation proceedings.

24. *State ex rel. Sec'y of the Dep't of Transp. v. Lawson,* C.A. No. N12C–01–128 (Del.Super. Sept. 25, 2013) (ORDER).

25. *Id.*

26. *Smith v. Guest,* 16 A.3d 920, 935 (Del. 2011).

tion.[27]

When construing a statute, Delaware courts must first determine whether the statute is ambiguous.[28] A statute is ambiguous if it is susceptible of two or more reasonable interpretations, or if a literal reading of the statutory language "would lead to an unreasonable or absurd result not contemplated by the legislature."[29] If the statute is determined to be unambiguous, "then there is no room for judicial interpretation and 'the plain meaning of the statutory language controls.'"[30]

### ANALYSIS

We first hold that the plain meaning of 29 Del. C. § 9503 requires that the Lawsons be reimbursed for the litigation expenses they incurred by reason of the condemnation proceeding. Second, we determine that the Superior Court did not abuse its discretion by finding that the Lawsons were not entitled to litigation expenses under the bad faith exception to the American Rule. Lastly, we conclude that the Superior Court abused its discretion by not addressing the Lawsons' application for costs.

### A. The Plain Meaning of 29 Del. C. § 9503

The Superior Court held that the reimbursement provision of the Act had not been triggered, because the August 7, 2013 dismissal of the condemnation action was not a "final judgment" that the "property [was] not subject to condemnation for the purpose stated by [DelDOT]."[31] That interpretation of 29 Del. C. § 9503 was erroneous. That statutory provision, which requires reimbursement of litigation expenses where a court enters a "final judgment ... that the real property cannot be acquired by condemnation," applies where the court determines that the property may not be acquired by the state's exercise of its eminent domain power in that particular condemnation proceeding. That result obtains even if the state is legally entitled to file a new, later condemnation action against the same property. 29 Del. C. § 9503 provides that:

Where a condemnation proceeding is instituted by the agency to acquire real property for such use and the final judgment is that the real property cannot be acquired by condemnation or the proceeding is abandoned, the owner of any right, title or interest in such real property shall be paid such sum as will, in the opinion of the court, reimburse such owner for reasonable attorney, appraisal and engineering fees, actually incurred because of the condemnation proceedings. The awards of such sums will be paid by the agency.[32]

The Lawsons do not claim that DelDOT "abandoned" the proceedings. Accordingly, whether § 9503 entitles the Lawsons to reimbursement of their litigation expenses turns on the meaning of the language "final judgment ... that the real property cannot be acquired by condemnation."

The Delaware General Assembly's statutory use of the term "condemnation" clear-

---

27. *Versata Enterprises, Inc. v. Selectica, Inc.*, 5 A.3d 586, 607 (Del.2010).

28. *Sussex Cnty. Dep't of Elections v. Sussex Cnty. Republican Comm.*, 58 A.3d 418, 422 (Del.2013).

29. *Id.* (quoting *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del.2011)).

30. *CML V, LLC*, 28 A.3d at 1041 (quoting *LeVan v. Independence Mall, Inc.*, 940 A.2d 929, 933 (Del.2007)).

31. *Lawson*, C.A. No. N12C–01–128, at 2 (Del.Super. Sept. 25, 2013) (ORDER).

32. 29 *Del. C.* § 9503.

ly refers to the particular process by which the state exercises its eminent domain power.[33] Similarly, "condemnation" is defined as "the exercise of eminent domain by a governmental entity."[34] "Eminent domain," in turn, is defined as "[t]he inherent power of a governmental entity to take privately owned property ... and convert it to public use, subject to reasonable compensation for the taking."[35] Condemnation, then, plainly refers to a governmental entity's particular use or application of its substantive eminent domain power, as distinguished from the substantive power itself. A Delaware governmental entity exercises its eminent domain power through condemnation—specifically, a condemnation proceeding.

Section 9503 clearly contemplates that the reimbursement provision applies in the context of a single condemnation proceeding. That provision begins by referencing "*a* condemnation proceeding"—meaning a particular, discrete exercise of the governmental entity's eminent domain power. And, throughout § 9503, the terms "condemnation proceeding," "condemnation," and "proceeding" are used interchangeably.[36] A plain reading of § 9503 therefore establishes that the phrase "final judgment ... that the real property cannot be acquired by condemnation" unambiguously refers to a final judgment, in a specific condemnation proceeding, that the subject property cannot be acquired by a governmental entity's particular exercise of its underlying eminent domain power in

that proceeding. Stated differently, to be triggered, the statute requires a final judgment that the condemned property cannot be taken because the governmental entity has improperly exercised its eminent domain power in that specific case.

Here, the condemnation proceeding instituted by DelDOT was dismissed because this Court found that DelDOT had inexcusably failed to comply with the Act's requirements when DelDOT attempted to take the Lawsons' property. That is, DelDOT had improperly exercised its substantive eminent domain power. For purposes of the reimbursement statute, that dismissal constituted a final judgment in the Superior Court proceedings commenced on January 18, 2012. That the dismissal was "without prejudice" served only to preserve DelDOT's right to attempt, in a later, separate proceeding, to acquire the Lawsons' property through a *proper* exercise of its eminent domain power. That the dismissal was "without prejudice" did not alter the finality of the judgment entered in that particular condemnation proceeding.

We therefore reverse the Superior Court judgment that the Lawsons were not entitled to be reimbursed for their litigation expenses under 29 *Del. C.* § 9503. The case will be remanded for a determination by that court of the "reasonable attorney, appraisal and engineering

---

**33.** *See* 10 *Del. C.* § 6101 ("This chapter shall govern the procedure for all condemnations of real and personal property within this State under the power of eminent domain exercised by any authority whatsoever, governmental or otherwise.").

**34.** *Black's Law Dictionary* 332 (9th ed. 2009). The full definition reads, "[t]he determination and declaration that certain property (esp. land) is assigned to public use, subject to

reasonable compensation; the exercise of eminent domain by a governmental entity."

**35.** *Id.* at 601.

**36.** "Where a *condemnation proceeding* is instituted by the agency ... and the final judgment is that the real property cannot be acquired by *condemnation* or the *proceeding* is abandoned...." 29 *Del. C.* § 9503 (emphasis added).

fees, actually incurred because of the condemnation proceedings."[37]

### DelDOT's Contrary Arguments

DelDOT advances three arguments to support the Superior Court's interpretation of 29 *Del. C.* § 9503. First, DelDOT argues that § 9503 plainly means that reimbursement is required only where a court has rendered a final judgment that the condemning agency may *never* condemn the subject property (*i.e.,* the condemning agency lacks the underlying substantive eminent domain power). Second, DelDOT argues that Delaware should follow case law from other jurisdictions (both federal and state) that supports the Superior Court's interpretation. Finally, DelDOT urges this Court to strictly construe § 9503 because it is in derogation of the common law. None of those arguments is persuasive.

To reiterate, DelDOT argues that the plain meaning of the reimbursement provision of the Act is that it is triggered only where a court has entered a final judgment that the subject property cannot be acquired in *any* condemnation proceeding. In essence, DelDOT is urging that the relevant language means "cannot be acquired by *eminent domain,*" *i.e.,* where the governmental agency is found to lack the substantive power to condemn the property. That argument is unavailing.

As Delaware's particular statutory usage and the dictionary definitions of "condemnation" and "eminent domain" show, those two terms are neither analogous nor interchangeable.[38] DelDOT's argued-for reading is not based on the "peculiar and appropriate meaning"[39] of the statutory term and, if adopted, would materially alter the meaning of "condemnation." That construction cannot qualify as a "plain" reading of the statute.

DelDOT next argues that this Court should adopt the interpretation used by courts of other jurisdictions (particularly federal courts) when construing similar statutes. This argument is colorable. The Real Property Acquisition Act was adopted in 1972 in response to the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970,[40] and the language of 29 *Del. C.* § 9503 is substantially similar to that of the corresponding federal provision.[41]

Even so, DelDOT's argument fails. DelDOT relies primarily upon the Ninth Circuit decision in *United States v. 4.18 Acres of Land.*[42] There, the court based its decision (which suggested that the federal reimbursement provision would apply only where the condemning agency lacked the underlying eminent domain power) upon the legislative history of the *federal* statute.[43] The non-Delaware state court deci-

---

37. *Id.*

38. "Condemnation" is defined as "[t]he determination and declaration that certain property (esp. land) is assigned to public use, subject to reasonable compensation; *the exercise of eminent domain by a governmental entity.*" "Eminent domain" is defined as "[t]he inherent power of a governmental entity to take privately owned property . . . and convert it to public use, subject to reasonable compensation for the taking." *Black's Law Dictionary* 332, 601 (9th ed. 2009) (emphasis added).

39. *See* 1 *Del. C.* § 303.

40. 58 Del. Laws ch. 413 (1972). The federal statute specified that federal funding would be withheld from a state unless that state provided for reimbursement of "necessary expenses" as specified in the federal reimbursement provisions (42 U.S.C.A. §§ 4653 and 4654). 42 U.S.C.A. § 4655(a)(2).

41. *See* 42 U.S.C.A. § 4654.

42. 542 F.2d 786 (9th Cir.1976).

43. *Id.* at 788–89. Moreover, the dismissal of the underlying condemnation action was precipitated by the government's failure to com-

sions cited by DelDOT relied on the suggestion in *4.18 Acres of Land* that the statute requires a final determination that under no circumstances can the government ever acquire the subject property by condemnation.[44] Our construction of 29 *Del. C.* § 9503, however, rests upon the plain meaning of the Delaware statute—a construction that precludes any judicial interpretation of § 9503. The judicial interpretations employed by other courts, based largely on federal legislative history, have no bearing on the unambiguous, plain meaning of the contested portion of 29 *Del. C.* § 9503.

Finally, DelDOT argues that because § 9503 derogates the common law American Rule, this Court must construe that provision strictly, and adopt the Superior Court's interpretation.[45] The short answer is that the plain meaning of § 9503 compels the construction of the statute we adopt, not a judicial interpretation which presupposes that the statute is ambiguous.

### B. The Bad Faith Exception to the American Rule

 The Lawsons' second claim of error is that the Superior Court abused its discretion by denying their motion for litigation expenses under the bad faith exception to the American Rule that each party pays its own litigation expenses.[46] We disagree. The bad faith exception applies only in "extraordinary cases,"[47] and the party seeking to invoke that exception must demonstrate by "'clear evidence' that the party from whom fees are sought ... acted in subjective bad faith."[48] The bad faith exception may apply if it is shown that a party has commenced an action in bad faith.[49]

The Lawsons argue that DelDOT brought its condemnation action in subjective bad faith, based on the finding in this Court's July 2013 Opinion that DelDOT clearly violated the Act when it failed to establish a purchase price amount "reasonably believed" to be just compensation.[50] That argument is misconceived. At most,

---

ply with regulations promulgated under the National Historic Preservation Act. *Id.* at 787–88. It is thus debatable whether that dismissal was in fact grounded on the government's improper exercise of its eminent domain power.

**44.** *See, e.g., Sorensen v. Lower Niobrara Natural Res. Dist.,* 215 Neb. 681, 340 N.W.2d 164, 166–67 (1983); *Bd. of Comm'rs of Cnty. of Knox v. Wyant,* 672 N.E.2d 77, 80–81 (Ind.Ct. App.1996). And, the Indiana statute at issue in *Wyant* requires a "final judgment ... that the agency cannot acquire the real property by eminent domain...." *Wyant,* 672 N.E.2d at 79 (quoting Ind.Code § 8–23–17–27).

**45.** *See Colonial Sch. Bd. v. Colonial Affiliate, NCCEA/DSEA/NEA,* 449 A.2d 243, 247 (Del. 1982) ("It is axiomatic that statutes in derogation of the common law are to be strictly construed.").

**46.** The Lawsons contend that under the bad faith exception to the American Rule they are entitled to reimbursement for more expenses than under 29 *Del. C.* § 9503, and that therefore this Court must address this ground for reimbursement in addition to 29 *Del. C.* § 9503.

**47.** *Dover Historical Soc'y, Inc. v. City of Dover Planning Comm'n,* 902 A.2d 1084, 1093 (Del. 2006).

**48.** *Auriga Capital Corp. v. Gatz Properties, LLC,* 40 A.3d 839, 880 (Del.Ch.2012), *aff'd,* 59 A.3d 1206 (Del.2012).

**49.** *Versata Enterprises, Inc. v. Selectica, Inc.,* 5 A.3d 586, 607 (Del.2010); *see also Johnston v. Arbitrium (Cayman Islands) Handels AG,* 720 A.2d 542, 546 (Del.1998) ("Although there is no single definition of bad faith conduct, courts have found bad faith where parties have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims.").

**50.** *Lawson,* 72 A.3d at 90–93.

that finding establishes that DelDOT's valuation appraisal was *objectively* unreasonable, thereby resulting in a statutory violation when DelDOT relied on that appraisal as the basis for its condemnation proceeding. Our Opinion, however, made no finding regarding DelDOT's *subjective* good faith in relying on the appraisal.[51] Accordingly, the Superior Court did not abuse its discretion by denying the Lawsons' application for a fee-shifting award of its litigation expenses under the bad faith exception to the American Rule.

## C. The Application for Costs

The Lawsons' final claim of error is that the Superior Court erred by not awarding costs or even addressing the issue. We are constrained to agree. It is well established that a trial judge must state the reasons for his or her decision on an adjudicated matter.[52] Here, the Superior Court order did not mention the issue of costs, or offer any reason for its implicit decision not to award costs. We must therefore remand the case to the Superior Court for an explicit determination as to whether the Lawsons are statutorily entitled to costs.

The Lawsons contend that they are entitled to reimbursement for costs under 10 *Del. C.* §§ 5101 and 5104, because the condemnation proceeding was dismissed. Those cited statutes are general provisions that address the issue of costs where a party prevails in an action at law.[53] 10 *Del. C.* § 6111, however, specifically addresses the issue of costs in the context of a condemnation proceeding.[54] Accordingly, on remand the Superior Court should consider the Lawsons' motion for costs as an application under 10 *Del. C.* § 6111.[55]

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the Superior Court judgment. We remand the case to the Superior Court for further proceedings in accordance with this Opinion. Jurisdiction is not retained.

---

51. Indeed, this Court found that just days before the condemnation action was filed, DelDOT's counsel informed the Lawsons that DelDOT disagreed with the Lawsons' position on the appraisal. *Id.* at 87.

52. *B.E.T., Inc. v. Bd. of Adjustment of Sussex Cnty.*, 499 A.2d 811, 811 (Del.1985) ("Failure to give such reasons constitutes an abuse of discretion.").

53. 10 *Del. C.* §§ 5101, 5104.

10 *Del. C.* § 5101 provides:
In a court of law, whether of original jurisdiction or of error, upon a voluntary or involuntary discontinuance or dismissal of the action, there shall be judgment for costs for the defendant. Generally a party for whom final judgment in any civil action, or on a writ of error upon a judgment is given

in such action, shall recover, against the adverse party, costs of suit, to be awarded by the court.

Section 5104 provides that "[i]f final judgment is given for the defendant in a civil action, which is in the name of the State for the use of any person or corporation, judgment for costs shall be given against such person or corporation."

54. 10 *Del. C.* § 6111. That statute relevantly provides that "[t]he costs of any condemnation proceeding provided for in this chapter ... shall be borne and paid for by the plaintiff or plaintiffs in the proportions determined by the Court."

55. *See Turnbull v. Fink*, 668 A.2d 1370, 1377 (Del.1995) (explaining that a specific statute prevails over a general statute).